Good morning. May it please the Court, Jonathan Libby appearing on behalf of Appellant Rodney Kidd. Your Honors, this case turns on the simple question of whether Mr. Kidd intentionally lied when he indicated that his and Ms. Gallardo's monthly combined rent was $340,000. Does it turn on that or does it turn on whether he knew that he lied? Beg your pardon, Your Honor? Does it turn on whether he lied or whether he knew that he lied? Or additionally, does it turn on whether he knew that he lied? Well, it turns – obviously, there are a number of – depending on the particular account we're dealing with, there are a number of different elements. But for all of the counts, it matters whether he thought he was lying. Right. And certainly he – That's different from whether he lied. Well, that's true. Now, it's our position he did lie, but he certainly didn't think he was lying when he indicated the combined rent was $4,400 a month. The landlord, who was the only witness the government produced who testified about what the rent was, made it very clear – Wait a minute. The government put on government officials to testify about what they thought he was allowed to do and not do, although – And they talked about what particular documents said. So the documents actually were primarily introduced through the defense attorney. But the only government witness who testified about what the rent actually was, was the landlord, who in fact made very clear the combined monthly rent that everybody understood was $4,400 a month. Counsel, that would be more believable if that amount of rent was actually paid to the landlord. The difficulty is that amount of rent was not paid to the landlord. Well, it was paid to the landlord, Your Honor. How? It was paid by the understanding that the rent was $4,400, but that as part of that $4,400, the landlord would provide $455 a month worth of amenities and – Well, he didn't provide the amenities. The tenant went out and purchased the amenities directly, which is very unusual, wouldn't you agree, for a tenant to go out and purchase the amenities and the landlord never get the money for those? I don't know how unusual it may or may not be, Your Honor. The fact is this was the agreement that all of the parties reached. I mean, I can tell you that just this month when I went to pay my rent online, the rent that was listed for me to pay was less than what my normal rent was because my landlord had credited my account with various things. So I ended up paying less this month than my typical monthly rent would be. Was this the usual lease that Mr. Kidd had, that he had previously? Did he have this lease previously, this arrangement with the landlord previously to deduct an amount for amenities? No. The amenities came up when Ms. Gallardo moved into the house and the parties agreed that she would have an additional lease also for $2,200 a month. And she had a housing allowance as well, correct? That's correct. Yes, they were both staff sergeants in the Air Force, both entitled to housing allowances. And the understanding was when she moved in with Mr. Kidd that each of them would pay $2,200 a month. And there was a combined lease agreement. I mean, that part seems exceedingly odd, but that is not what the thrust of the charges are here, the fact that you could double the rent because somebody else moved in. Right. But that's not what the charges are. But that's not what the charges are, right. The fact is that's what was agreed to. That's what the housing office had approved. So there was no question that it was permissible to have a combined rent for $4,400 a month. But what about the, I guess, the most damning fact, it seems to me from, in terms of your client's position, is just the failure to disclose the side agreement. And I guess why couldn't a jury infer from that fact that, you know what, he actually did know that these amenities were either not things that you could get approved through this program, or even if there was a possibility that they could, you know, it would be very difficult to. And so he just hid that. And so therefore he knew what he was doing was wrong. Well, I guess it begs the question, what was he hiding, if in fact anything was being hidden? He was hiding, I'll just try to play devil's advocate, right? He was hiding the fact that, yes, the program in theory allowed you to have this arrangement where the landlord would include certain amenities in the rent, and the government would nonetheless pay the full $4,400, let's say. But there were some restrictions on what kinds of amenities, this and that and the other. And so had he disclosed to the government that this is the arrangement I've got, maybe it would have all been good. But why couldn't a jury infer that he knew there was a reason why he was hiding this from the government and not, you know what I'm saying? So help me with that. Well, Your Honor, I think the fact that if someone is attempting to defraud the government, they typically don't draw up and enter into a binding written contract. And that's what we have here. We have a binding written contract between three parties. Gallardo, Kidd, and the landlord. But if it was part of the lease agreement, why wasn't it included with the lease agreement that was turned into the housing office? Your Honor, and I have to say, and I recognize that the testimony certainly from the housing officials was that it was not in the housing files, right? I believe when I look at the excerpts, so on page 788, government exhibit 13 is what  That's the contract regarding the amenities. If you look at the bottom right-hand corner of the page, it has in handwritten language attached 003, page 11 of 11, with the initials of Mr. Pizarro, which, if you then look at the rental agreement for Ms. Gallardo, which is exhibit 14, it matches right up, that this, in fact, was page 11 of 11 of the lease agreements. Now, I don't know if it somehow didn't make it into Ms. Gallardo's files, but I don't This was an agreement that was part of Ms. Gallardo's agreement when she entered into it. Mr. Kidd's original lease agreement was still in effect. So, again, I'm not sure that there was any intention of hiding it, based on the fact that this was an attachment to Ms. Gallardo's lease agreement. But the jury was certainly entitled to infer that there was an intent to hide it, based on the testimony from the government officials, that it was not provided. Well, I don't know about hide it, Your Honor. It certainly Was not provided. It certainly was not in the file. That's absolutely true. And could it raise questions? Why? I suppose it could raise questions. But, again, if the intent here was to deceive the government, then why was there a contract? If this was a conspiracy between all of the parties to defraud the government of all of this money, actually, it's not a whole lot of money. Well, we don't have to answer that question. We have to determine whether or not there is substantial evidence in the record to support the jury's verdict. And it could be argued that the fact that this side agreement was not included with the document supports a reasonable inference from the jury, that it was consistent with an attempt to deceive the government. Well, Your Honor, again, I would respectfully disagree. And when one looks at all of the evidence in the record, I don't believe that that's, in fact, supportable. But then, bottom line, it comes down to It doesn't matter whether, in fact, there was anything he thought there was anything to deceive the government about. That is, if he, if there, the government, as I understand it, is not maintaining and says something that's brief, but it doesn't actually matter whether or not this was allowed or not. And he, I mean, there is some discussion in the papers where he suggests that he thought, at least for a while, that it was valid and later decided maybe it isn't. That's right. Well, after he was being threatened with prosecution, he's like, all right, well, they're coming after me. Maybe I was doing something wrong. That's certainly true. But I don't think that's an admission that he was doing anything wrong. Again, he still thought he was doing everything right in terms of these amenities. And we have the evidence at trial. The government's witnesses testified, yes, these amenities could have been approved. The government's witnesses testified both ways. Sorry? They testified both ways, didn't they? Well, there was some confusion, I think, if one closely reads it. There was some discussion, I believe, from Ms. Diaz. I may have gotten confused about utilities as opposed to the rent. The fact is the district court made findings when she ruled on the Rule 29 motion that said very clearly that it may be allowable for a landlord to pay for interior and exterior maintenance. It may be that there were no government or military regulations introduced suggesting that housekeeping or lawn services or cable or internet or phone were not allowable and that such services likely are allowable. And it may be allowable for a landlord to pay for telephone, cable, internet. The district court made those findings. Maybe. But those they just said may be allowable. So that's why the jury had to sort through everything, determine credibility determinations, and then make a verdict. Let me ask you about the termination of the side agreement. At what point in the factual scenario was the side agreement terminated? I believe that was in November of 2013 when the investigation into Ms. Gallardo was underway, and Mr. Kidd had been made aware of the fact that they were investigating Ms. Gallardo, because Ms. Gallardo was separately prosecuted.  One can actually, if one looks at her plea agreement, the factual basis for her plea agreement, what in fact it says is that they had secretly negotiated additional terms to their lease whereby each would pay $227 less their $2,200 share every month so that the U.S. Air Force would unknowingly pay for their housekeeping, cable, television, lawn care bills, expenses that would not be reimbursable under military regulations. The government's whole premise here, whole understanding, whole basis for this prosecution was that these amenities were not allowable under military regulations. But the government introduced no military regulations to establish that at Mr. Kidd's trial. So the whole basis for Ms. Gallardo actually pleading guilty doesn't apply to Mr. Kidd. Counsel, if Mr. Kidd thought that the amenities were included in the rent, why did he terminate the side agreement? Because of the investigation. I think it's very, very simply. He just, he essentially said, I don't want to deal with this anymore. But he said because he looked on the Internet and discovered that it may not be valid. That it may, that that is possible. The fact is that he had been told earlier that it was valid. And he couldn't tell, essentially. It's your time, you're over your time. We'll give you a minute to rebuttal. Thank you, Your Honor. May it please the Court? The standard here is that the evidence must be evaluated in the light most favorable to the government. That all legitimate inferences must be drawn in favor of the prosecution and all evidentiary disputes and credibility issues have to be resolved. The first charge was essentially theft, right? To have theft, you have to have an intent to take money that belongs to someone else. Right? Yes, both counts 1 and 2 were theft. I'm sorry, what? Both counts 1 and 2 were theft and Mr. Kidd was acquitted of count 1. Well, I'm only talking about the one that he was convicted of, count 2. Isn't it an element of that crime that, in fact, it was forbidden to do what he did because it wasn't, the money belonged to the government? No? Is there any? Well, yes. It doesn't matter, the government's position in his brief was it doesn't really matter whether he was allowed to do this or not. That's correct, Your Honor. Well, how could it not matter if an element of the crime is that he intend to take from the government something that belonged to the government, i.e., money that he wasn't entitled to? No? Well, he wasn't entitled to it because he was lying about the amount. He was representing the government that the rent was $4,400, but he was only paying $39.45. And he has an explanation for that. But, and he thinks that what, and he says that what he, and there's nothing in the regulation by the government to discount, that says that his understanding is incorrect, right? That he could, A, get the amenities, B, pay for them, get a discount and pay for themselves. There's no regulation or document or guidance or anything that says you can't do that. Is there? Actually, exhibit number three, government's exhibit three, Your Honor, is KIDS OHA declaration. And it prohibits, it contains language to the effect that I will not negotiate for additional amenities and so forth. So, and of course- No, I thought it said not available to the public. Not available to the general public. Okay, yeah, that's correct. And I probably made services- Well, and so forth matters because you didn't prove that it wasn't available to the general public. Well, that's not an element of the offense, though, and the failure to disclose the side agreement- Well, the element of the offense is that he took something that he wasn't supposed to take. And how did you prove that? Well, the- And the judge said at the end that she couldn't understand the regulations. Yeah, the government's position is that Mr. KIDS' failure to disclose the side agreement was a lie, and that's powerful evidence of his intent- Let's put that aside for now. How is it theft? Okay. Because, as I stated in my brief, Mr. KIDS was obviously intending to get amenities that he was not entitled to, or that he pocketed the difference without letting the government know of what the true rent was. And the jury apparently agreed. Was there any motion made to set aside the jury verdict? Yes, Your Honor. And the district court denied that? There were- that's correct. In December, I believe. All right. So then let's go to the lying. Lying requires that he know what he said was false, doesn't it? That's correct. And if he thought what he was doing was perfectly valid, then why does the fact that he didn't want to pay for the amenities? His version is, I was paying $4,400 in rent. I made an arrangement with the landlord, which was fully borne out by the paper trail, that he would provide these amenities, but he didn't want to pay for them, so he said I would pay for them. And, in fact, I even gave him back some money when I paid less, but he didn't want it. And then he says, moreover, that there's no evidence that he pocketed the- that he didn't spend the money on what he said he was spending it for. Is there any evidence in the record about that? Well, of course, that was argued before the jury. That's an evidentiary dispute. Well, the jury was that he didn't spend the money on what he said he- excuse me. Was your position before the jury that he didn't spend the money on what he said he was spending it for? I'm not familiar with the record that well, Your Honor, to tell you whether or not- Oh, that's a real problem. That was argued by- I mean, then what are you doing here? I can tell you that there is nothing in the record that suggests that he wasn't pocketing- that he was not using the money for what he said he was going to use it for. Does that matter? I agree that it would have been a- yes. I agree that it would have been a stronger case had that been delved into, Your Honor, but I don't think it's fatal to the case. So what's the lie? Tell me what the lie is. What's the misrepresentation? The lie is presenting a claim to the United States government that you're paying $4,400 a month in rent when the landlord is only getting $3,945. Now, the question was raised before- Is there anything in the regulations that prohibits an arrangement where a part of the rent is given to you to pay for things that the landlord's agreed to pay for? Has the government ever demonstrated that there's something wrong with that? Not in the record, Your Honor. I do wonder why, if you were not the lawyer on this case to begin with, why you made such a big fuss about your having to argue it if you don't know the record. I apologize for not being better prepared, Your Honor. Tomorrow is my last day with the United States Attorney's Office and we've had a typhoon come through here earlier this week. The United States Attorney's Office is going to find somebody else to argue who also didn't know the record. It didn't make a lot of sense. Yeah. Well, the gentleman that tried the case is no longer with the office and I agreed to step in and help the Guam office. I do apologize for not being better prepared. Mr. Antioch, you want to tell us? I guess I'd like to know what is the lie and what is the theft? The lie is the dual lease agreement that states that the rent is $4,400 a month when it's not, when the landlord is only getting $3,945. The failure to disclose is powerful evidence of Mr. Kidd's intent to deceive the government and to steal that money. The question was asked before.  Except for one party, the U.S. government was not aware of this agreement. Mr. Libby also posited the question about if this was a conspiracy, why did they lay this paper trail? I would ask why didn't they disclose that agreement if this was not a conspiracy? If their intent was not to take money from the government, why didn't they simply produce this agreement and deal with it? Anything else? Yes, I think that there's more than enough evidence in the record to satisfy Jackson's bare rationality test and I thank you. Okay, thank you. Your Honor, just in response to what the government counsel just said, the reason why the government wasn't involved, government is not a party to lease agreements. We know that from the testimony at trial. The government has nothing to do with lease agreements. Those are strictly between landlords and tenants. But you do have to send a lease agreement to the government. That's correct, and the lease agreements were sent and approved by the housing office. Now, this separate contract regarding specifically the amenities apparently did not make it into the file. Well, is there some requirement that any such side agreements have to be in the lease? That the lease has to encompass the entire arrangement? Not that I'm aware of, Your Honor. Certainly not based on any of the evidence that was produced at trial by the government. And they just probably didn't think it was any big deal, so that's why they didn't turn it in. Well, can I ask you about Government Exhibit 6? There might be other reports like this, but it's one of the OHA reports. And so there's, it's box 7, I guess, you know, where it says, like... Can I grab my excerpt? Oh, of course, yeah. It's talking about utilities as opposed to amenities, but it's asking the person to disclose There's a box that you can check. It says, I separately pay for some utilities, excluding telephone, and some are included in the rental agreement with the landlord, right? So I guess I kind of infer from that that, yeah, this all might be fine. There might not be anything wrong with your having the landlord agree to pay for these certain things, but it seems like the government, for whatever reason, is interested in knowing about that kind of arrangement. Like I said, I grant you this is about utilities. We're talking about something different. But why wouldn't the jury be able to infer that, yeah, he knew that that also would be of interest to the government? Well, because I think, because utilities and the rent are different, and there was extensive testimony specifically about that, how for OHA, there's three parts to it, and one of it has to do with the rent, one has to do with utilities, and I honestly can't remember what the third one is. But the utilities are completely separate. Because you get a separate payment from the government for utilities? Correct. I see. Yes. Every service member gets the exact amount of utility reimbursement, regardless of how much they might actually be paying. And in fact, the testimony was people can use that money for anything they want. That they can use to pay their student loans and to buy lunch and anything else. Utilities, they just get a flat payment. Rent is different, and rent changes. It has to be based on the lease agreement, and it's based on the position that you hold in the military, whether you have dependents. All of those can change how much you are authorized to get. So utilities is very different. Does that mean that if you check on this box, you know, for example, that, yeah, my electricity and heat and air conditioning, they're all included in the rent, do you then get a reduced amount, or do you not get your full rent? No, for utilities or for rent? So for utilities, again — No, no. I'm pausing the situation where some of your utilities that you would otherwise be separately reimbursed for are actually included in the rent. And so what happens? Do you get the — do you still get 100 percent of the rent and whatever your utility allowance would be? You get whatever rent was approved by the housing office, and you get the flat utility payment that everybody in the service gets. So those are completely separate. Or do they reduce the amount of the rent that you're entitled to? My understanding is no. That's — Then why do they ask you this question? Who cares if some of the utilities are included in the rent? That doesn't — It's a government form, Your Honor, so I honestly don't know. I did want to add — I thought there was some provision that the utilities that are covered by the utility payments can't be in the rent, can't be paid for by the landlord. Okay. So, again, it depends on how one characterizes the term utilities. I understand. The ones that are covered by the utility payments, which are designated, they cannot be, as I understand it, included in — paid for by the landlord as part of the rent. Well, they can be. In fact — and there was discussion about this. It's very common for homeowners association, if you happen to lease a condominium, then homeowners association may cover utilities. And so, yes, that's still all covered by your rent, but that is, again, separate and apart from the utility reimbursement that you're entitled to. And reimbursement about — And you can get a utility reimbursement even if your utilities, those utilities that are covered are being paid for by the landlord. That's correct, Your Honor, because everyone is entitled to a utility payment. I use the word reimbursement. I don't know if it's technically reimbursement because it has nothing to do with what you actually pay for utilities. It seems to me they have a problem with their rules here. I mean, the $4,400 is really the problem here. All right. That's right, Your Honor. Thank you very much. Thank you both for your arguments. Thank you, Your Honor. And good luck with your new career. Thank you. And learn the record next time. Thank you very much. The case of United States v. Kidd is submitted, and we are in recess.
judges: Berzon, Rawlinson, Watford